THE HONORABLE JAMES P. DONOHUE

1

2

3

| | FILED  ENTERED |
| | LODGED  RECEIVED |

**07-CV-00797-M**

4

5                                                                    MAY 2 5 2007    LK

6                                                        AT SEATTLE
                                          CLERK U.S. DISTRICT COURT
                                   WESTERN DISTRICT OF WASHINGTON
                                                              DEPUTY

7                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
8                                    AT SEATTLE

9    ZANGO, INC.,
                                                    No. CV-07-0797 JPD
10                        Plaintiff,
                                                    **PLAINTIFF ZANGO'S MOTION FOR**
11        v.                                        **TEMPORARY RESTRAINING ORDER**

12   PC TOOLS PTY, LTD.,

13                        Defendant.

14

15                          I.  **RELIEF REQUESTED**

16        Plaintiff Zango, Inc. ("Zango") is a Bellevue-based company that provides content to

17   its customers via the Internet.  On May 11, 2007, Zango learned that a scanning application

18   ("Spyware Doctor") distributed by defendant PC Tools Pty Ltd. ("PC Tools") was

19   systematically eliminating Zango's software and products from the computers of millions of

20   users.  Spyware Doctor provides the computer user with no specific warning that Zango's

21   software application would be deleted; instead, Zango's software simply vanished from the

22   user's computer, leaving Zango with no means of contacting or communicating with its

23   customers.

24

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY          **CORR CRONIN MICHELSON**
RESTRAINING ORDER – Page 1                        **BAUMGARDNER & PREECE LLP**
No. CV-07-0797 JPD                                1001 Fourth Avenue, Suite 3900
                                                  Seattle, Washington 98154-1051
                                                  Tel (206) 625-8600
                                                  Fax (206) 625-0900

ORIGINAL

1    Spyware Doctor's extensive, ongoing and irreversible attack on Zango warrants

2    immediate injunctive relief. Here are just a few of the irreparable consequences Zango will

3    continue to suffer absent injunctive relief:

4    • Zango customers who install Spyware Doctor version 5.0.184 ("SD 184")
     receive no explicit notice that the Spyware Doctor program is irrevocably
5    removing Zango products from their computers. Accordingly, when these
     customers are unable to access their Zango programs after the installation of
6    Spyware Doctor, they unfairly (but understandably) blame Zango for the
     programs' disappearance. As a result, PC Tools' product is causing Zango to
7    lose existing customers (and their goodwill) on daily basis.

8    • Because Zango does not collect personal identifying information from its
     customers, customers that Zango loses due to PC Tools' attack are lost forever;
9    similarly, Zango has no means of contacting its customers and warning them of
     the attack. For this reason, PC Tools is not just irrevocably erasing Zango
10   products from users' computers, it is also irrevocably erasing hard-earned
     customers from the rolls of Zango's customer lists.
11
12   • Spyware Doctor 184 also causes Zango to lose future customers. Once
     installed, the Spyware Doctor program prevents the future installation of
13   Zango products, which means that Zango is forever prevented from reaching
     these potential customers.

14   There is no justification for Spyware Doctor's attack on Zango's products. Richard

15   Purcell – a world-renowned independent computer privacy expert – has conducted an

16   exhaustive review of Zango's products and policies and pronounced them to be benign. *See*

17   Declaration of Richard Purcell (hereinafter "Purcell Decl."). Indeed, PC Tools itself has

18   *admitted* that Zango's products are "not malicious." *See* Exhibit A (e-mail communication of

19   March 28, 2007 from director of PC Tools' Malware Research Centre) to Declaration of

20   Gregg Berretta (hereinafter "Berretta Decl.").

21   Given these uncontested facts, there is no question that Zango will prevail in the

22   claims set forth in the Complaint it quickly filed after learning of PC Tools' misconduct.

23   Indeed, just one day after Zango filed its Complaint (and one day before a scheduled TRO

24   hearing), an attorney for PC Tools contacted an attorney for Zango, agreed that PC Tools was

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – Page 2
No. CV-07-0797 JPD

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    incorrectly classifying Zango's products and assured Zango that PC Tools would solve the

2    problem as soon as possible.  Based on these assurances, Zango agreed to postpone the

3    scheduled TRO hearing.

4    PC Tool's assurances have so far proved illusory and Zango can afford to wait no

5    longer for the relief PC Tools has promised.  As a result of Spyware Doctor's widespread

6    distribution via Google, Zango is suffering massive irreparable harm to its business model and

7    reputation *right now*, and without quick intervention by this Court, Zango will continue to

8    suffer irreversible harm that will never adequately be compensated at law.  Accordingly,

9    Zango seeks a temporary restraining order, and, ultimately, a preliminary injunction,

10   compelling PC Tools to immediately remove Zango's software programs from the Spyware

11   Doctor detection database.

12   ## II.  STATEMENT OF FACTS

13   Zango is an online media company based in Bellevue, Washington that provides

14   consumers free access to a large catalog of online videos, games, music, tools and utilities.

15   Zango's catalog of content is offered to customers free of charge and is sponsored by

16   advertising that customers agree to view as a condition of using the products.  Zango also

17   offers a premium version of its software that gives consumers access to Zango's content

18   catalog without advertising.

19   Zango takes extensive precautions to ensure that every Zango customer affirmatively

20   and knowingly consents to download, installation and continued usage of Zango software.  An

21   independent audit conducted by Richard Purcell, CEO of Corporate Privacy Group, released

22   on May 7, 2007, concluded that Zango is fully compliant with all reasonable and

23   recommended privacy requirements, and, in particular that Zango's privacy program ensures:

24   (1) user notification of the program or application's existence; (2) user consent to the

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – Page 3
No. CV-07-0797 JPD

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    download or installation of the program or application; and (3) user control of the program or

2    application. *See* Purcell Decl., Ex. B. As a result of Zango's commitment to protecting the

3    privacy of its customers, Zango can be certain, and Mr. Purcell has verified, that all users who

4    have installed Zango's applications or products since January 1, 2006 have done so

5    consensually.

6    PC Tools is in the business of developing and marketing various computer protection

7    and security software programs. One such program is "Spyware Doctor." On or about March

8    29, 2007, Google, Inc. began including a version of Spyware Doctor called "Spyware Doctor

9    Starter Edition" (hereinafter, "Starter Edition") in its "Google Pack" software package. Given

10   Google's massive Internet presence, the number of consumers who have downloaded and

11   installed Starter Edition since March 29 likely reaches into the millions.

12   On May 11, 2007, Zango learned that Starter Edition is disabling Zango installations

13   to the point that existing, consensually installed Zango software already resident on a

14   consumer's computer no longer functions. Further testing revealed that while the Starter

15   Edition software prevents the display of advertisements from Zango on behalf of Zango's

16   advertising partners (which is the primary source of Zango revenue), some existing Zango

17   customers nonetheless are still able to access the content in Zango's catalog (i.e., the movies,

18   games, screensavers, and the like). Starter Edition software damages the Zango application

19   immediately upon installation, without giving any specific notice whatsoever to Zango

20   customers or providing any opportunity for Zango customers to consent or intervene.

21   These actions stand in stark contrast to the treatment Zango's products received from

22   security software application "Ad-Aware SE" (hereinafter "Ad-Aware"), which was formerly

23   offered as part of the "Google Pack," and which Spyware Doctor replaced. Ad-Aware is

24   manufactured and distributed by a company called Lavasoft AB, which is not a party to this

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – Page 4
No. CV-07-0797 JPD

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    action. Unlike Spyware Doctor, the only action Ad-Aware took with respect to Zango's

2    applications was to notify users upon installation that Zango products will make a change to

3    the user's Windows registry. Ad-Aware provided an identical warning to users upon

4    installation of all non-malicious software, including such popular downloadable applications

5    as the Google or Yahoo! toolbars.

6          Crucially, Ad-Aware provided users with an opportunity to choose whether to take

7    any action with respect to Zango products or whether to allow Zango products to remain

8    installed on the user's computer. Zango customers who install Spyware Doctor 184 are given

9    no such notice. Immediately upon installation, Spyware Doctor damages and destroys

10    Zango's applications. The fact that Zango's customers are unable to intervene in this process

11    is attested to by the emails Zango has received from customers complaining that Spyware

12    Doctor disabled their Zango products. *See* Berretta Decl., Ex. B.

13          Internal testing of Starter Edition by Zango also showed that, after a brief period of

14    time following the initial disabling of Zango's software, Starter Edition repeatedly delivers a

15    specific type of message format (sometimes called a "toaster") on the user's screen stating

16    "Malicious Action Blocked" and identifying Zango's software as an "Elevated Risk." As PC

17    Tools well knows, and has admitted, characterization of Zango's products in this manner is

18    not accurate. In an email communication sent March 28, 2007, Jim Meem, the director of PC

19    Tools' Malware Research Centre, stated that "[w]e [PC Tools] have concluded that Seekmo

20    [one of the four essentially identical Zango software brands] *is not malicious*." (Emphasis

21    added.) Berretta Decl., Ex. A. Yet this is precisely how Spyware Doctor, PC Tools' flagship

22    product, chooses to label Zango products to Zango customers.

23          Finally, testing has also shown that consumers who have Starter Edition already

24    installed on their computers are unable to install Zango's software, thereby eliminating Starter

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – Page 5
No. CV-07-0797 JPD

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    Edition users as potential customers of Zango's software. Again, Starter Edition provides no

2    opportunity for users who wish to download and install Zango's software to override Starter

3    Edition and do so.

4    Zango has suffered significant damage to its reputation, customer base and business

5    model as a result of the actions of the PC Tools software described above. A revenue analysis

6    performed by Zango's Director of Finance shows an abrupt change from positive revenue

7    momentum to sharp negative revenue momentum taking place on approximately April 1, i.e.,

8    coinciding with Starter Edition's inclusion in Google Pack. *See* Declaration of Tom Allan

9    (hereinafter "Allan Decl."), Exhibit A. In addition to the damage inflicted by severing

10   Zango's relationships with existing and contemplated customers, PC Tools' actions are likely

11   to have a chilling effect on Zango's ability to partner with new content providers and

12   distribution channels, thereby disrupting Zango's business model. Moreover, being labeled

13   "malicious" by an anti-spyware application damages Zango's reputation in the marketplace, a

14   reputation that Zango has worked hard to achieve.

15   Beginning on May 11, Zango repeatedly contacted senior PC Tools' employees,

16   including its CEO, General Counsel, and the Head of its Malware Research Centre, to request

17   the removal of Zango products from the Starter Edition detection database. Complying with

18   this request would not be onerous for PC Tools, as detection databases are typically updated

19   hourly. Berretta Decl. ¶¶ 14, 15. Nor would removing Zango products from the detection

20   database negatively impact PC Tools customer base or potential future customers seeking

21   protection from spyware, as all Zango users have consensually downloaded Zango's software.

22   PC Tools ignored Zango's requests.

23   After PC Tools refused to remove Zango products from its detection database, Zango

24   filed a complaint in King County Superior Court on May 15, 2007. On May 16, 2007, Zango

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – Page 6
No. CV-07-0797 JPD

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  gave PC Tools notice that it planned to seek a TRO on May 17, 2007.  In a bid to delay the

2  scheduled TRO hearing, PC Tools assured Zango that it would reclassify and modify its

3  software to eliminate the harm Zango was incurring (and continues to incur).  Based on these

4  assurances, Zango agreed to delay the hearing.

5       PC Tools' assurances notwithstanding, Zango continues to be harmed, as the version

6  of Spyware Doctor that is on the Google website continues to damage and delete Zango

7  products without user consent.  Equally important, Zango continues to suffer irreparable harm

8  from earlier versions of Spyware Doctor.

9       In the last week, Zango has repeatedly complained about PC Tools' failure to modify

10  its products and the irreparable damage it suffers every day from the version of SD that

11  remains on the Google Pack web site.  Accordingly, on Tuesday, May 22, Zango gave PC

12  Tools notice of its intent to seek a TRO from the ex parte department of the King County

13  Superior Court the next day.  After receiving notice of the May 23 hearing, PC Tools'

14  attorney represented that PC Tools shipped a modified version of Spyware Doctor to Google

15  on May 23.  Nevertheless, although PC Tools has apparently made updated versions of

16  Spyware Doctor available to other clients, as of the current date and time, SD 184 remains on

17  the Google Pack website.  On May 24, 2007, PC Tools removed this case to this Court.

18  ### III.  STATEMENT OF ISSUES

19       Whether the Court should enter a temporary restraining order and preliminary

20  injunction compelling defendant PC Tools to remove Zango's software programs from the

21  Spyware Doctor detection database.

22  ### IV.  EVIDENCE RELIED UPON

23       Zango relies upon the Declarations of Robert Purcell, Gregg Berretta, Tom Allan and

24  the exhibits attached therein.

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – Page 7
No. CV-07-0797 JPD

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

# V.  **AUTHORITY**

**A.    Legal Standard**

In determining whether to issue a temporary restraining order or preliminary injunction, federal courts in the Ninth Circuit consider: (1) the likelihood of success on the merits, (2) the possibility that the plaintiff will suffer irreparable injury without injunctive relief, (3) the extent to which the "balance of hardships" favors the plaintiff, and (4) whether injunctive relief would advance the public interest (in certain cases). *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980); *Del Toro-Chacon v. Chertoff*, 431 F. Supp. 2d 1135, 1140 (W.D. Wash. 2006). *See also Citizens Alliance to Protect our Wetlands v. Wynn*, 908 F. Supp. 825, 829 (W.D. Wash. 1995) (the standard for preliminary injunctions also applies to temporary restraining orders). "The analysis is often compressed into a single continuum where the required showing of merit varies inversely with the showing of irreparable harm." *Del Toro-Chacon*, 431 F. Supp. 2d at 1140. Therefore, the movant may satisfy its burden "by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Los Angeles Mem'l Coliseum*, 634 F.2d at 1201. As will be demonstrated, Zango satisfies these requirements.

**B.    Zango is Likely to Succeed on the Merits.**

Zango's first cause of action against PC Tools, intentional interference with Zango's contractual relations or business expectancy, requires the following elements:

> (1) the existence of a valid contractual relationship or business expectancy;
> (2) that the defendant had knowledge of that relationship; (3) an intentional
> interference inducing or causing a breach or termination of the relationship or
> expectancy; (4) that defendant interfered for an improper purpose or used
> improper means; and (5) resultant damage.

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – Page 8
No. CV-07-0797 JPD

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    *Leingang v. Pierce County Medical Bureau,* 131 Wn.2d 133, 157, 930 P.2d 288 (1997)

2    (internal citations omitted).[1]

3    The likelihood that Zango will prevail on this cause of action is overwhelming.  Zango

4    has a valid contractual relationship with its existing customers and a valid business

5    expectancy in future customers of Zango products.  *See Newton Ins. Agency & Brokerage,*

6    *Inc. v. Caledonian Ins. Group, Inc.,* 114 Wn. App. 151, 158, 52 P.3d 30 (2002) ("A valid

7    business expectancy includes any prospective contractual or business relationship that would

8    be of pecuniary value.").  PC Tools clearly had knowledge of the relationship between Zango

9    and its customers as well as Zango's prospective business prospects and equally clearly

10   purposefully interfered with those relations and prospects by disabling Zango's software and

11   by preventing any future customers from being able to install Zango software.  *See id.*

12   ("Interference with a business expectancy is intentional 'if the actor desires to bring it about

13   or if he knows that the interference is certain or substantially certain to occur as a result of his

14   action.'") (quoting Restatement (Second) of Torts § 766B cmt. d).  Moreover, PC Tools

15   interfered for an improper purpose – advancement of its own commercial interests at Zango's

16   expense – and its bad faith is evident by its continuing refusal to remedy the ongoing damage

17   being inflicted on Zango.  Finally, the resultant damage to Zango is self-evident: PC Tools'

18   actions have caused and continue to cause substantial financial damage by severing the

19   relationship between Zango and its current and potential future customers (in addition to the

20   damage Zango is suffering to its reputation and business model).

21   Zango is very likely to prevail on its second cause of action against PC Tools as well.

22   Liability for trade libel attaches where a defendant: (1) publishes false and disparaging

23

24       [1] Federal courts apply state tort law in diversity cases.  *Estate of Domingo v. Republic of
     Philippines,* 694 F. Supp. 782, 785 (W.D. Wash. 1988).

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – Page 9
No. CV-07-0797 JPD

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    statements concerning the quality of the plaintiff's product; (2) does so with the intent that

2    such publication results in harm to the pecuniary interest of the plaintiff, or either recognizes

3    or should recognize that such harm is likely; and (3) does so with actual malice (i.e., either

4    knows that the statement is false or acts in reckless disregard of its truth or falsity).

5    Restatement (Second) of Torts § 623A; *see also Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 820

6    (9th Cir. 1995) (assuming that Washington recognizes trade libel based on Washington Court

7    of Appeals decision citing Restatement § 623A for the proposition that plaintiffs seeking

8    damages in disparagement face a higher burden of proof than those seeking damages in

9    defamation).  Here, PC Tools has labeled, and continues to label, Zango's products as an

10   "infection," as "malicious" and as an "elevated risk."  Labeling Zango products in this manner

11   is likely to mislead existing customers into believing that Zango applications are damaging

12   their computers or somehow compromising their privacy, which, as PC Tools knows, is not

13   the case.  Future customers who are blocked from downloading Zango products are likely to

14   reach the same conclusion.  Zango has worked hard to achieve a good reputation in the

15   marketplace, and to foster relationships with customers, content-providers, and distribution

16   channels.  Spyware Doctor's baseless and, yes, malicious, attacks on Zango's products

17   threaten all that Zango has worked to achieve.

18          Zango will likewise be able to establish its cause of action under the Washington

19   Consumer Protection Act ("CPA").  A plaintiff makes a *prima facie* showing of a CPA

20   violation when it shows (1) an unfair or deceptive act; (2) in trade or commerce; (3) impacting

21   the public interest; (4) injuring Plaintiff in its business or property; and (5) causation.

22   *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531

23   (1986).  PC Tools specifically markets itself as a purveyor of security software that protects

24   consumers from so-called "spyware."  PC Tool's unfair and deceptive conduct thus has a

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – Page 10
No. CV-07-0797 JPD

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    public interest impact, and the conduct clearly injured and will continue to injure Plaintiff's

2    business, reputation, and goodwill.

3    **C.    PC Tools' Conduct Has Caused, and Will Continue to Cause, Irreparable Injury
         to Zango.**

4         Courts routinely recognize that significant loss of customers or business goodwill and

5    damage to business reputation may constitute substantial or irreparable harm justifying

6    injunctive relief. *See, e.g., Multi-Channel TV Cable Co. v. Charlottesvlle Quality Cable*

7    *Operating Co.,* 22 F.3d 546, 552 (4th Cir. 1994) ("[W]hen the failure to grant preliminary

8    relief creates the possibility of permanent loss of customers to a competitor or the loss of

9    goodwill, the irreparable injury prong is satisfied."); *K-Mart Corp. v. Oriental Plaza, Inc.,*

10   875 F.2d 907, 915 (1st Cir. 1989) ("[H]arm to goodwill, like harm to reputation, is the type of

11   harm not readily measurable or fully compensable in damages -- and for that reason, more

12   likely to be found 'irreparable.'"); *Ginorio v. Gomez,* 301 F. Supp. 2d 122, 134 (D.P.R. 2004)

13   (plaintiffs sought an injunction to stop the defendant from revoking their insurance licenses;

14   court found that plaintiff had established irreparable injury where evidence showed that the

15   "the insurance business is one based on trust and . . . the revocation of plaintiffs licenses, even

16   if temporary, would result in unmeasurable harm to plaintiffs' reputation[,]" and that plaintiffs

17   "existing clients and any potential new ones would have to take their business elsewhere.").

18        Here, as a result of PC Tools' conduct, Zango has suffered damages to its customer

19   base, its reputation, and its business model.  In addition to the direct financial damages being

20   inflicted by PC Tools, Zango faces the ongoing prospect of permanent loss of customers to

21   competitors in the marketplace, loss of goodwill, and damage to its reputation.  These are not

22   losses that are easily recouped or which may be cured solely by recovery of money damages.

23

24

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – Page 11
No. CV-07-0797 JPD

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**D.**     **The Balance of Hardships Tips in Zango's Favor.**

The balance of hardships favors relief to Zango.  Zango will suffer—in fact, it is already suffering—incalculable harm if the temporary restraining order is not granted.  Day by day, Zango is losing its customers and suffering damage to its goodwill and reputation.  Conversely, the relief requested by Zango asks very little of PC Tools, and would have no effect on its existing customer base or future customers.  Given the significant ongoing damages being suffered by Zango, and the ease with which PC Tools may remedy the situation, balancing of the equities favors granting the present motion.

## VI.  CONCLUSION

The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm pending further court proceedings.  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).  That is all that Zango seeks here.  Zango will have probable success on the merits, and it has already suffered irreparable injury (and will continue to do so).  The balance of hardships tips sharply in Zango's favor.  For the foregoing reasons, this Court should issue a temporary restraining order, and, ultimately, a preliminary injunction, compelling PC Tools to remove Zango's software programs from the Spyware Doctor detection database.

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    DATED this 25th day of May, 2007.

2                                          CORR CRONIN MICHELSON
                                           BAUMGARDNER & PREECE LLP
3

4

5

6    Kelly P. Corr, WSBA #00555
     Steven W. Fogg, WSBA #23528
7    Attorneys for Plaintiff
     Zango, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – Page 13
No. CV-07-0797 JPD

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## CERTIFICATE OF SERVICE

The undersigned declares as follows:

I am employed at Corr Cronin Michelson Baumgardner & Preece LLP, attorneys of record for Plaintiff Zango, Inc. herein.

I hereby certify that on May 25, 2007, I electronically filed the attached foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following persons:

> J. Ronald Sim
> Maren R. Norton
> Stoel Rives LLP
> 600 University Street
> Suite 3600
> Seattle, WA 98101-3197

and I hereby certify that I have delivered via U.S. Mail the document to the following non CM/ECF participants:

N/A

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 25 day of May, 2007, at Seattle, Washington.

Joyce Abraham

PLAINTIFF ZANGO'S MOTION FOR TEMPORARY
RESTRAINING ORDER – Page 14
No. CV-07-0797 JPD

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900